IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 23-cr-79-CFC |
| MARTIN GREEN, | |
| Defendant. | |

## **MEMORANDUM**

Pending before me is Defendant Martin Green's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2). D.I. 34. Green filed this motion *pro se*. D.I. 34. Section 3582(c)(2) authorizes a court to reduce a sentence for a "defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o) . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Green argues that I should reduce his sentence because he is entitled to a downward departure under the recently adopted Sentencing Guidelines Amendment 829. *See* D.I. 34 at 3. That amendment provides that "[a] downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." U.S. Sent'g Guidelines Manual § 5H1.1 (U.S. Sent'g Comm'n 2024). The government opposes Green's motion. D.I. 35.

I.  **BACKGROUND**

Green pleaded guilty in October 2023 to one count of possession with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). D.I. 20 ¶ 1. Green was thirty-three years old at the time of his sentencing in April 2024. D.I. 33 at 2. He is now thirty-four years old.

Green is a career offender under § 4B1.1(b) of the Sentencing Guidelines because he has three prior felony convictions for controlled substance offenses. D.I. 33 ¶ 45; *see also* D.I. 33 ¶¶ 63, 68, 73. Green was sentenced to the first of these convictions (for manufacturing, delivering, or possessing with intent to deliver heroin) when he was twenty-three years old. D.I. 33 ¶¶ 63–64. A Delaware Superior Court judge sentenced him to "ten years' imprisonment suspended after three years, [the] balance to be served at quasi-incarceration (home confinement or halfway house), suspended after six months of quasi-incarceration, for 18 months' probation." D.I. 33 ¶ 63. In other words, even though the state judge told Green that he was being sentenced to ten years in jail, the state judge actually sentenced Green to three years in jail, to be followed by six months of either confinement at Green's home or in a half-way house, and then 18 months of probation.

Less than four years later, while Green was on probation, Green was again convicted in a Delaware state court for drug dealing (i.e., manufacturing, delivering, or possessing with intent to deliver heroin and crack cocaine). D.I. 33 ¶¶ 68–69. The sentence he received for this second offense was less than what he received for the first offense—"ten years' imprisonment, suspended after 18 months, for one year confinement in a halfway house/home confinement," D.I. 33 ¶ 68. Less than two years after receiving this sentence (and, once again while he was on probation), Green, then twenty-nine years old, was again convicted in Delaware state court of manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance. D.I. 33 ¶ 73. The state judge in this third case sentenced Green to "ten years['] imprisonment, suspended after 18 months for two years six months' probation." D.I. 33 ¶ 73; *see also* 4.24.24 Sent'g Tr. (docketed as D.I. 36) 17:21–18:3.

While Green was on probation for this third offense, he continued to deal drugs. *See* D.I. 33 ¶¶ 15–31. On several occasions, Green, then thirty-two years old, drove to a meeting place in New Castle County, Delaware to sell one-ounce quantities of methamphetamine to a buyer. D.I. 33 ¶¶ 16, 17, 20–23. This buyer was, unbeknownst to Green, a confidential informant. D.I. 33 ¶¶ 15–23. During one of those transactions, Green sold methamphetamine to the buyer while his girlfriend's two sons sat in the back seat of the car. D.I. 33 ¶ 23.

On May 24, 2023, agents conducted surveillance of Green as he drove to a meeting with his state probation officer. D.I. 33 ¶¶ 24–25. On the way to the meeting, Green pulled the car over, removed a bag from the car, and placed the bag in the wheel well of his girlfriend's car. D.I. 33 ¶ 25. Law enforcement subsequently seized the bag and found that it contained 64 bags of heroin, and that the car's interior contained two bags with a total of 717 grams of methamphetamine, another 260 bags of heroin, and a digital scale. *See* D.I. 33 ¶ 28. Green also kept a stockpile of drugs—899 grams of methamphetamine and 4,160 baggies of suspected heroin—in a storage unit that he rented. D.I. 33 ¶ 27. Between the storage unit and the car, law enforcement recovered, in total, 1,896 grams of methamphetamine and 31.3 grams of heroin. D.I. 33 ¶ 31. For context, a typical user of methamphetamine often consumes between one to two grams per dose. *See United States v. Tiangco*, 225 F. Supp. 3d 274, 281 (D.N.J. 2016) (explaining how the jury "heard evidence that a typical [methamphetamine] user would consume a gram or less"); *United States v. Sanchez*, 789 F.3d 827, 831 n.3 (8th Cir. 2015) ("Multiple witnesses testified that a user-type quantity of methamphetamine ranges from a quarter of a gram to two grams, depending on the 'quality' of the drugs."); *United States v. Sturgill*, 761 F. App'x 578, 586 (6th Cir. 2019) (summarizing testimony that "multiple 8-balls or ounces of methamphetamine" were "sell[er] quantities" while "the typical 'user quantit[y]'

4

was a gram") (alterations in the original). Green therefore possessed hundreds, if not thousands, of doses of methamphetamine.

Once in custody, Green immediately confessed that all the drugs in his girlfriend's car belonged to him. D.I. 33 ¶ 29. He also admitted that the two pounds of methamphetamine in the storage unit belonged to him. D.I. 33 ¶ 29. To aid in its investigation of the drug suppliers, the government offered Green an opportunity to cooperate. 4.24 Tr. 10:10–15. Green told the arresting agents that he used Bitcoin to buy the methamphetamine from someone on the Internet. D.I. 33 ¶ 29. But Green otherwise refused to cooperate. 4.24 Tr. 10:10–15, 37:11–13. On September 18, 2023, Green was charged federally—for the first time—with possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). D.I. 33 ¶ 4. On October 17, 2023, Green pleaded guilty to this offense. D.I. 33 ¶¶ 5–6.

Because of his career offender status, Green's sentencing guideline range in this case was 151 to 188 months. D.I. 33 ¶ 120. Neither the government nor the defense moved for a departure from the guidelines. 4.24 Tr. 5:7–11. Green's lawyer, however, asked for a downward variance to 120 months. D.I. 27 at 1; 4.24 Tr. 11:11–12. The government asked for a sentence of 151 months. D.I. 29 at 1. I granted a downward variance and sentenced Green to 133 months of

imprisonment, three years of supervised release, and a special assessment of $100 payable to the United States. D.I. 32.

At the sentencing hearing, I weighed the § 3553(a) factors. I stated in relevant part:

> Then we get to uniformity, that's the last purpose. That's to kind of treat people the same. That's why we have guidelines. That's why I normally do not vary from the guidelines because I think the guidelines do a good job of trying to treat people, who are similarly situated, the same.
>
> It gets a little difficult when you start talking about the guidelines, though, when we come to the career offender. Because you can have crimes of violence, and you have crimes of drugs count as the predicate crimes for the career offender, and I think personally, regardless of what the Commission thinks or anybody else thinks, the violent crimes are the worst crimes.
>
> So the fact that your predicates aren't violent crimes is a factor in my assessment of what the right sentence is because you would be a different person or different -- you would be differently situated if you were before me and your two predicates were crimes of violence, as opposed to relatively not significant drug dealing. It was still drug dealing, which is bad.
>
> So guidelines are important, but especially in the context of a career offender, they may not achieve uniformity.
>
> The last thing I'm thinking about, it's not a purpose of sentencing, but it's a big thing, is the failure of our state criminal justice system. *Because you were very young when you started in that system.* You had three judges give you a sentence of ten years, but then decide

> to suspend it after three years, and then after you got involved again, instead of making . . . the next sentence more serious, they did the opposite. They gave you ten years and then suspended it after 18 months.
>
> And then you got involved again, and you think your sentence should go up, not down, but they gave you ten years suspended after 18 months. *If you are a 20-year-old and your brain is not fully formed, that sends the wrong message.*
>
> *So I think it's very important that your sentence today be much more significant than what you've got in the state court, but I think probably the most important message is to really send it home to you because you're young, to make sure that you realize this is it. I mean, you only get so many chances in life.*

4.24 Tr. 38:9–40:1 (emphasis added).

I then gave my reasons for granting the downward variance:

> So what I'm going to do, I'm going to vary below the guidelines. I'm going to give you 133 months though. Here's why.
>
> *Because I think when I consider all the factors together, I think it's appropriate to go below the guidelines. I think it's not a good thing that somebody who is young goes through the state system, and they get a slap on the wrist, and then a lighter slap on the wrist, and then they get a lighter slap on the wrist, and then they are brought into federal court, and it's a sledgehammer. That's why I'm going to vary down.*
>
> *I think the career offender status for you and the guideline range doesn't factor into how you got here.*
>
> I'm not going to give you 120 months; although, in a way I am because I actually think it would send a

7

message to you and to the public at large to say it's effectively 120 months. 120 months is ten years.

We've talked about the First Step Act, and we've talked about good time. If I give you 120 months, it's actually going to be less. But if I give you 133 months, and figure 10 percent off for the First Step Act. I know you say it could be 20 [percent off]. I'm going to say ten [percent] on average.

Ten percent off of 133 months would put you at 120 months. You can still get good time below that. But the idea here is what I'm trying to tell you I'm giving you a ten-year sentence, but this time, it really is a ten-year sentence. That's why I'm calling it 133 months. It's really a ten-year sentence, which I think is severe enough that it sends a message to the public, to you that this is a serious crime. We can't have our children's lives ruined by drug dealing.

You've got seven kids. You should appreciate that.

But at the same time, we can't have a state system that fails, and then we have the feds come in and bring the sledgehammer or the nuclear bomb to the justice system.

*Punishment, when you have somebody who reengages, it should be incremental.* Your sentences in the state system should have gone up, and if somebody wanted to really send a message to you, an appropriate message, they shouldn't have said I'm going to give you ten years and really let you out after three.

What I'm going to do is I'm going to say I think in a way, I think the 120 months would be sufficient, but I really want to make sure to send the message of deterrence, you appreciate you are getting the full ten

8

> years, all right. That's what I'm going to do, give you 133 months.

4.24 Tr. 40:3–42:2 (emphasis added).

Green's expected release date is October 31, 2032. Bureau of Prisons' Inmate Locator, https://www.bop.gov/inmateloc/?os=vb.&ref=app [https://perma.cc/ZGH4-TYRN]. On December 2, 2024, less than eight months after his sentencing, Green filed this motion. D.I. 34.

## II. ANALYSIS

In general, a district court cannot "modify a term of imprisonment once it has been imposed" unless a defendant is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Section 3582(c)(2) provides that a court may reduce the sentence of a "defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o) . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

Section 1B1.10 is the applicable policy statement for § 3582(c)(2). *See* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) (U.S. Sent'g Comm'n 2024) ("As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement."); *see also Dillon*,

9

560 U.S. at 821 (stating that U.S.S.G. § 1B1.10 is the applicable policy statement for § 3582(c)(2)). A reduction in the term of a defendant's sentence is "not consistent with [U.S.S.G. § 1B1.10]" and, therefore, not authorized under § 3582(c)(2) if "none of the amendments listed in subsection (d) is applicable to the defendant" or "an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range." U.S. Sent'g Guidelines Manual § 1B1.10(a)(2) (U.S. Sent'g Comm'n 2024).

Green argues that I should reduce his sentence under § 3582(c)(2) because he is entitled to a downward departure under Sentencing Guidelines Amendment 829, also known as the "Youthful Individuals" amendment, which added the following policy statement to U.S.S.G. § 5H1.1:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

U.S. Sent'g Guidelines Manual § 5H1.1 (U.S. Sent'g Comm'n 2024). The amended version of § 5H1.1 took effect on November 1, 2024. U.S. Sent'g

Guidelines Manual § 5H1.1, amend. 829 (U.S. Sent'g Comm'n 2024), https://www.ussc.gov/guidelines/amendment/829 [https://perma.cc/9NS4-76TF].

I will deny Green's motion for three reasons. First, Amendment 829 does not apply retroactively and therefore is not applicable to Green. For a court to reduce a sentence under § 3582(c)(2), the amendment must be retroactive. *See Dillon*, 560 U.S. at 826 ("A court's power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive."). Section 1B1.10(d) of the Guidelines lists the amendments that the Commission has made retroactive. *See United States v. Prophet*, 989 F.3d 231, 238 (3d Cir. 2021) (stating that "the Commission[] list[s] . . . retroactive amendments in § 1B1.10(d)"). The Commission did not list Amendment 829 in § 1B1.10(d). *See* U.S. Sent'g Guidelines Manual § 1B1.10(d) (U.S. Sent'g Comm'n 2024). Amendment 829, therefore, is not retroactive.

Second, even if Amendment 829 did apply retroactively, the amendment does not itself lower Green's sentencing range as required to reduce a sentence under § 3582(c)(2). The amendment merely identifies factors that a judge may consider in determining whether to grant a downward departure at sentencing.

Third, even if Amendment 829 provided a basis for a sentence reduction under § 3582(c)(2), as evident from the excerpts of the sentencing hearing quoted above, I took into account the considerations identified in Amendment 829 when I

11

granted Green a variance and sentenced him to 133 months, and I do not believe a further departure or variance is warranted.

## III.   CONCLUSION

For the reasons stated above, I will deny Green's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(2).

The Court will issue an Order consistent with this Memorandum.

April 28, 2025

                                                                                                                   Chief Judge